■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN R. LEWIS, Appellant. [940 NYS2d 722]—

Appeal from a judgment of the Monroe County Court (Richard A. Keenan, J.), rendered January 4, 2008. The judgment convicted defendant, upon jury verdicts, of murder in the second degree, criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree (two counts), attempted murder in the second degree, assault in the first degree (two counts), robbery in the first degree (two counts) and burglary in the first degree (two counts).

It is hereby ordered that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him of, inter alia, murder in the second degree (Penal Law § 125.25 [1]) and attempted murder in the second degree (§§ 110.00, 125.25 [1]) following two jury trials. The charges at issue in the first trial arose from an incident in which defendant shot and injured a woman after forcing his way into her

home. The charges at issue in the second trial arose from an incident in which defendant shot and killed a man on a bicycle after the man had spoken with defendant's girlfriend.

Based on our review of the record, including the October 19, 2007 transcript of County Court's decision on those parts of the omnibus motion of defendant seeking to suppress certain evidence, we conclude that the court properly denied that part of the motion seeking to suppress his statements to the police during an interview. "The evidence at the suppression hearing establishes that, after receiving . . . *Miranda* warnings, defendant indicated that he understood his [*Miranda*] rights and agreed to speak with the [police]" (*People v Jacobson*, 60 AD3d 1326, 1327 [2009], *lv denied* 12 NY3d 916 [2009]). The fact that defendant was taken to a county jail booking area and then returned to the police station after his interview commenced but before he made the statements at issue is inconsequential. "It is well settled that where a person in police custody has been issued *Miranda* warnings and voluntarily and intelligently waives [his or her *Miranda*] rights, it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody has remained continuous" (*People v Glinsman*, 107 AD2d 710, 710 [1985], *lv denied* 64 NY2d 889 [1985], *cert denied* 472 US 1021 [1985]; *see People v Peterkin*, 89 AD3d 1455 [2011]; *Jacobson*, 60 AD3d at 1327).

Defendant further contends that one of his statements to the police was involuntary inasmuch as it was obtained as a result of police deception, i.e., the use of a videotape as a prop, and as a result of the conduct of the police in attempting to capitalize on the potential criminal liability of defendant's girlfriend. We reject that contention. "Deceptive police stratagems in securing a statement 'need not result in involuntariness without some showing that the deception was so fundamentally unfair as to deny due process or that a promise or threat was made that could induce a false confession' " (*People v Dishaw*, 30 AD3d 689, 690 [2006], *lv denied* 7 NY3d 787 [2006], quoting *People v Tarsia*, 50 NY2d 1, 11 [1980]). Under the circumstances of this case, the fact that the police used a videotape as a prop does not warrant suppression (*see id.* at 690-691). Moreover, although threats by the police to arrest a person's loved ones may result in suppression (*see People v Keene*, 148 AD2d 977, 978-979 [1989]), "[i]t is not an improper tactic for police to capitalize on a defendant's sense of shame or reluctance to involve his [loved ones] in a pending investigation absent circumstances [that] create a substantial risk that a defendant might falsely incrimi-

nate himself [or herself]" (*People v Balkum*, 71 AD3d 1594, 1597 [2010], *lv denied* 14 NY3d 885 [2010] [internal quotation marks omitted]). Here, there is no evidence "that the police promised not to arrest defendant's girlfriend if defendant talked . . . , and there were no other circumstances creating a substantial risk that defendant would falsely incriminate himself" (*id.* [internal quotation marks omitted]).

In addition, there is no merit to the contention of defendant that the length of his interrogation negated the voluntariness of his statements to the police. The length of an interrogation does not necessarily render a statement obtained during that time involuntary, and there is no evidence here that the duration of defendant's interviews with the police, which we note totaled approximately four hours over a six-hour time period, contributed to the statements in question (*see e.g. People v McWilliams*, 48 AD3d 1266, 1267 [2008], *lv denied* 10 NY3d 961 [2008]; *People v Weeks*, 15 AD3d 845, 846-847 [2005], *lv denied* 4 NY3d 892 [2005]). In any event, we conclude that any error in the admission in evidence of the statements in question is harmless (*see generally People v Crimmins*, 36 NY2d 230, 237 [1975]).

Defendant further contends that the court erred in refusing to suppress an eyewitness identification of him from a photo array because the witness was shown a prior photo array that also contained defendant's photograph. Even assuming, arguendo, that defendant's contention is preserved for our review, we conclude that it is without merit. " 'Multiple photo identification procedures are not inherently suggestive' " (*People v Dickerson*, 66 AD3d 1371, 1372 [2009], *lv denied* 13 NY3d 859 [2009]). "While 'the inclusion of a single suspect's photograph in successive arrays is not a practice to be encouraged' " (*People v Beaty*, 89 AD3d 1414, 1415 [2011]), an "identification [is] not rendered unduly suggestive merely because the witness was shown more than one photo array and defendant's photograph was the only photograph shown in both photo arrays" (*Dickerson*, 66 AD3d at 1372). Here, although defendant's photograph appeared in the same sequence in each photo array, the record establishes that different photographs of defendant were used in each presentation to the witness (*see id.*), that there was a two-day lapse of time between the presentations (*see generally id.*; *People v Quinones*, 228 AD2d 796, 796-797 [1996]), and that the witness appears to have identified defendant after the police addressed her fears with respect to the safety of her family. Considering the circumstances of the photo arrays, we conclude that there is nothing unduly suggestive in the procedure used to identify defendant as the shooter in the second incident (*see generally Dickerson*, 66 AD3d at 1372).

Defendant failed to preserve for our review his contention that the murder conviction is not supported by legally sufficient evidence (*see People v Hawkins*, 11 NY3d 484, 492 [2008]; *People v Gray*, 86 NY2d 10, 19 [1995]) and, in any event, that contention lacks merit. Viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), we conclude that defendant's intent to kill the victim was inferable from his conduct, i.e., approaching and shooting the victim in the stomach and chest at close range (*see People v Green*, 74 AD3d 1899, 1900 [2010], *lv denied* 15 NY3d 852 [2010]; *People v Colon*, 275 AD2d 797 [2000], *lv denied* 95 NY2d 904 [2000]; *see generally People v Bleakley*, 69 NY2d 490, 495 [1987]). Viewing the evidence in light of the elements of the crime of murder in the second degree as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349 [2007]), we reject defendant's further contention that the verdict with respect to that count is against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).

We conclude that "defense counsel's failure to call an expert [ballistics] witness [at either of the two trials] did not constitute ineffective assistance of counsel inasmuch as defendant failed to demonstrate 'that the expert's testimony would have assisted the trier of fact or that defendant was prejudiced by the absence of such testimony' " (*People v Powell*, 81 AD3d 1307, 1307 [2011], *lv denied* 17 NY3d 799 [2011]; *see People v Loret*, 56 AD3d 1283 [2008], *lv denied* 11 NY3d 927 [2009]). "[W]ith respect to defendant's challenge to the sentence imposed, along with an alleged trial tax imposed by the court, we note that [t]he mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations is not proof that defendant was punished for asserting his right to trial . . . Indeed, the record here shows no retaliation or vindictiveness against the defendant for electing to proceed to trial" (*People v Russell*, 83 AD3d 1463, 1465 [2011], *lv denied* 17 NY3d 800 [2011] [internal quotation marks omitted]). The sentence is not unduly harsh or severe.

Defendant's remaining contentions are raised in his pro se supplemental brief. Defendant contends that the court erred in admitting in evidence the statement of the murder victim to a police officer shortly after the shooting under the excited utterance exception to the hearsay rule. That contention lacks merit inasmuch as the victim was under extraordinary stress when the statement was made (*see People v Jones*, 66 AD3d 1442 [2009], *lv denied* 13 NY3d 939 [2010]). Defendant's further contention "that he was denied his right to testify before the

[g]rand [j]ury is based on material dehors the record, and thus not susceptible of review . . . In any event, defendant waived that contention by failing to move to dismiss the indictment pursuant to CPL 190.50 (5) (c)" (*People v Sachs*, 280 AD2d 966, 966 [2001], *lv denied* 96 NY2d 834 [2001], 97 NY2d 708 [2002]). Finally, we reject the contention of defendant that he was denied a prompt preliminary hearing. " '[T]here is no constitutional or statutory right to a preliminary hearing . . . , nor is it a jurisdictional predicate to indictment' " (*People v Caswell*, 56 AD3d 1300, 1302 [2008], *lv denied* 11 NY3d 923 [2009], 12 NY3d 781 [2009], *cert denied* 556 US 1286 [2009]). Even assuming, arguendo, that defendant was entitled to be released on his own recognizance based on the court's failure to afford him a preliminary hearing, we conclude that such failure does not require dismissal of the indictment or a new trial (*see People v Bensching*, 117 AD2d 971 [1986], *lv denied* 67 NY2d 939 [1986]; *see also People v Russ*, 292 AD2d 862 [2002], *lv denied* 98 NY2d 713 [2002], 99 NY2d 539 [2002]). Present—Centra, J.P., Fahey, Peradotto, Carni and Lindley, JJ.