# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**176**

**KA 08-00131**

PRESENT: CENTRA, J.P., FAHEY, PERADOTTO, CARNI, AND LINDLEY, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

           V                          MEMORANDUM AND ORDER

KEVIN R. LEWIS, DEFENDANT-APPELLANT.

---

LORENZO NAPOLITANO, ROCHESTER, FOR DEFENDANT-APPELLANT.

KEVIN R. LEWIS, DEFENDANT-APPELLANT PRO SE.

MICHAEL C. GREEN, DISTRICT ATTORNEY, ROCHESTER (GEOFFREY KAEUPER OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Monroe County Court (Richard A. Keenan, J.), rendered January 4, 2008. The judgment convicted defendant, upon jury verdicts, of murder in the second degree, criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree (two counts), attempted murder in the second degree, assault in the first degree (two counts), robbery in the first degree (two counts) and burglary in the first degree (two counts).

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him of, inter alia, murder in the second degree (Penal Law § 125.25 [1]) and attempted murder in the second degree (§§ 110.00, 125.25 [1]) following two jury trials. The charges at issue in the first trial arose from an incident in which defendant shot and injured a woman after forcing his way into her home. The charges at issue in the second trial arose from an incident in which defendant shot and killed a man on a bicycle after the man had spoken with defendant's girlfriend.

Based on our review of the record, including the October 19, 2007 transcript of County Court's decision on those parts of the omnibus motion of defendant seeking to suppress certain evidence, we conclude that the court properly denied that part of the motion seeking to suppress his statements to the police during an interview. "The evidence at the suppression hearing establishes that, after receiving . . . *Miranda* warnings, defendant indicated that he understood his [*Miranda*] rights and agreed to speak with the [police]" (*People v Jacobson*, 60 AD3d 1326, 1327, *lv denied* 12 NY3d 916). The fact that

defendant was taken to a county jail booking area and then returned to the police station after his interview commenced but before he made the statements at issue is inconsequential. "It is well settled that where a person in police custody has been issued *Miranda* warnings and voluntarily and intelligently waives [his or her *Miranda*] rights, it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody has remained continuous" (*People v Glinsman*, 107 AD2d 710, 710, *lv denied* 64 NY2d 889, *cert denied* 472 US 1021; *see People v Peterkin*, 89 AD3d 1455; *Jacobson*, 60 AD3d at 1327).

Defendant further contends that one of his statements to the police was involuntary inasmuch as it was obtained as a result of police deception, i.e., the use of a videotape as a prop, and as a result of the conduct of the police in attempting to capitalize on the potential criminal liability of defendant's girlfriend. We reject that contention. "Deceptive police stratagems in securing a statement 'need not result in involuntariness without some showing that the deception was so fundamentally unfair as to deny due process or that a promise or threat was made that could induce a false confession' " (*People v Dishaw*, 30 AD3d 689, 690, *lv denied* 7 NY3d 787, quoting *People v Tarsia*, 50 NY2d 1, 11). Under the circumstances of this case, the fact that the police used a videotape as a prop does not warrant suppression (*see id.* at 690-691). Moreover, although threats by the police to arrest a person's loved ones may result in suppression (*see People v Keene*, 148 AD2d 977, 978-979), "[i]t is not an improper tactic for police to capitalize on a defendant's sense of shame or reluctance to involve his [loved ones] in a pending investigation absent circumstances [that] create a substantial risk that a defendant might falsely incriminate himself [or herself]" (*People v Balkum*, 71 AD3d 1594, 1597, *lv denied* 14 NY3d 885 [internal quotation marks omitted]). Here, there is no evidence "that the police promised not to arrest defendant's girlfriend if defendant talked . . ., and there were no other circumstances creating a substantial risk that defendant would falsely incriminate himself" (*id.* [internal quotation marks omitted]).

In addition, there is no merit to the contention of defendant that the length of his interrogation negated the voluntariness of his statements to the police. The length of an interrogation does not necessarily render a statement obtained during that time involuntary, and there is no evidence here that the duration of defendant's interviews with the police, which we note totaled approximately four hours over a six-hour time period, contributed to the statements in question (*see e.g. People v McWilliams*, 48 AD3d 1266, 1267, *lv denied* 10 NY3d 961; *People v Weeks*, 15 AD3d 845, 846-847, *lv denied* 4 NY3d 892). In any event, we conclude that any error in the admission in evidence of the statements in question is harmless (*see generally People v Crimmins*, 36 NY2d 230, 237).

Defendant further contends that the court erred in refusing to suppress an eyewitness identification of him from a photo array because the witness was shown a prior photo array that also contained

defendant's photograph.  Even assuming, arguendo, that defendant's
contention is preserved for our review, we conclude that it is without
merit.  " 'Multiple photo identification procedures are not inherently
suggestive' " (*People v Dickerson*, 66 AD3d 1371, 1372, *lv denied* 13
NY3d 859).  "While 'the inclusion of a single suspect's photograph in
successive arrays is not a practice to be encouraged' " (*People v
Beaty*, 89 AD3d 1414, ___ ), an "identification [is] not rendered
unduly suggestive merely because the witness was shown more than one
photo array and defendant's photograph was the only photograph shown
in both photo arrays" (*Dickerson*, 66 AD3d at 1372).  Here, although
defendant's photograph appeared in the same sequence in each photo
array, the record establishes that different photographs of defendant
were used in each presentation to the witness (*see id.*), that there
was a two-day lapse of time between the presentations (*see generally
id.; People v Quinones*, 228 AD2d 796, 796-797), and that the witness
appears to have identified defendant after the police addressed her
fears with respect to the safety of her family.  Considering the
circumstances of the photo arrays, we conclude that there is nothing
unduly suggestive in the procedure used to identify defendant as the
shooter in the second incident (*see generally Dickerson*, 66 AD3d at
1372).

     Defendant failed to preserve for our review his contention that
the murder conviction is not supported by legally sufficient evidence
(*see People v Hawkins*, 11 NY3d 484, 492; *People v Gray*, 86 NY2d 10,
19) and, in any event, that contention lacks merit.  Viewing the
evidence in the light most favorable to the People (*see People v
Contes*, 60 NY2d 620, 621), we conclude that defendant's intent to kill
the victim was inferable from his conduct, i.e., approaching and
shooting the victim in the stomach and chest at close range (*see
People v Green*, 74 AD3d 1899, 1900, *lv denied* 15 NY3d 852; *People v
Colon*, 275 AD2d 797, *lv denied* 95 NY2d 904; *see generally People v
Bleakley*, 69 NY2d 490, 495).  Viewing the evidence in light of the
elements of the crime of murder in the second degree as charged to the
jury (*see People v Danielson*, 9 NY3d 342, 349), we reject defendant's
further contention that the verdict with respect to that count is
against the weight of the evidence (*see generally Bleakley*, 69 NY2d at
495).

     We conclude that "defense counsel's failure to call an expert
[ballistics] witness [at either of the two trials] did not constitute
ineffective assistance of counsel inasmuch as defendant failed to
demonstrate 'that the expert's testimony would have assisted the trier
of fact or that defendant was prejudiced by the absence of such
testimony' " (*People v Powell*, 81 AD3d 1307, 1307, *lv denied* 17 NY3d
799; *see People v Loret*, 56 AD3d 1283, *lv denied* 11 NY3d 927).
"[W]ith respect to defendant's challenge to the sentence imposed,
along with an alleged trial tax imposed by the court, we note that
[t]he mere fact that a sentence imposed after trial is greater than
that offered in connection with plea negotiations is not proof that
defendant was punished for asserting his right to trial . . . Indeed,
the record here shows no retaliation or vindictiveness against the
defendant for electing to proceed to trial" (*People v Russell*, 83 AD3d

1463, 1465, *lv denied* 17 NY3d 800 [internal quotation marks omitted]).
The sentence is not unduly harsh or severe.

Defendant's remaining contentions are raised in his pro se
supplemental brief. Defendant contends that the court erred in
admitting in evidence the statement of the murder victim to a police
officer shortly after the shooting under the excited utterance
exception to the hearsay rule. That contention lacks merit inasmuch
as the victim was under extraordinary stress when the statement was
made (*see People v Jones*, 66 AD3d 1442, *lv denied* 13 NY3d 939).
Defendant's further contention "that he was denied his right to
testify before the [g]rand [j]ury is based on material dehors the
record, and thus not susceptible of review . . . In any event,
defendant waived that contention by failing to move to dismiss the
indictment pursuant to CPL 190.50 (5) (c)" (*People v Sachs*, 280 AD2d
966, 966, *lv denied* 96 NY2d 834, 97 NY2d 708). Finally, we reject the
contention of defendant that he was denied a prompt preliminary
hearing. " '[T]here is no constitutional or statutory right to a
preliminary hearing . . ., nor is it a jurisdictional predicate to
indictment' " (*People v Caswell*, 56 AD3d 1300, 1302, *lv denied* 11 NY3d
923, 12 NY3d 781, *cert denied* ___ US ___, 129 S Ct 2775). Even
assuming, arguendo, that defendant was entitled to be released on his
own recognizance based on the court's failure to afford him a
preliminary hearing, we conclude that such failure does not require
dismissal of the indictment or a new trial (*see People v Bensching*,
117 AD2d 971, *lv denied* 67 NY2d 939; *see also People v Russ*, 292 AD2d
862, *lv denied* 98 NY2d 713, 99 NY2d 539).

Entered: March 23, 2012                    Frances E. Cafarell
                                           Clerk of the Court